Allen, J.
On the 5th of April 1836, the appellee as administrator instituted four actions against the appellant in his character of administrator, two upon bonds executed by the testator of the appellant to William Cunningham, and a third upon a small bond executed by the testator of the appellant to Joshua Drinkard; the fourth was an action of assumpsit. On the same day a fifth action was instituted by the appellee as such administrator against the appellant as surviving obligor of his testator upon a fourth bond ; and on the 6th of October 1836, the appellee as such administrator, instituted another action of assumpsit against the appellant individually.
On the 7th October 1836 the two actions of debt on the large bonds executed by the testator of the appellant to the appellee’s intestate, were consolidated on the motion of the appellant. Issues having been made up in these two cases upon pleas of payment accompanied with an account of offsets, an ineffectual effort to try them was made in October 1839 ; a jury was empannelled, but a juror was afterwards withdrawn. The plea of payment was put in to each of the other two' actions of debt, and the pleas of non assumpsit and the statute of limitations to the two ac *686 tions of assumpsit. The six cases stood on these issues until the 10th of April 1840, when, by consent of parties, an order was made referring the six causes “to James Lyons and Raleigh T. Daniel, and in case of disagreement between them, then to Benjamin W. Leigh, and if he should refuse to act, then to Samuel Taylor, as the umpire to decide such difference for their arbitrament and award, which, when made by them or their umpire, and duly certified by them, should be entered as the judgment of the court.”
Mr. Leigh declined to act, and the two arbitrators, with Mr. Taylor, proceeded together to hear the testimony of the parties. The arbitrators being unable to agree, the umpire alone made out and returned his award on the 16th of April 1846. At a subsequent term the appellant having filed exceptions and moved to set aside the award, the court overruled the exceptions, confirmed the award, and proceeded to enter judgment in all the cases in pursuance thereof. From the four judgments against him the appellant has applied for and obtained writs of supersedeas, assigning for error the same matters which were relied on in the court below by way of exceptions to the award.
In his award, the umpire refers to the reports of the two arbitrators as showing that they had differed in each case, and that therefore the contingency had occurred which made it his duty to decide the six suits referred. It is argued here that in this conclusion, the umpire misconstrued the extent of his authority: That under the submission, it was not his function to decide the six suits referred, but merely to settle the differences between the arbitrators; and that in effect, it was a submission to the award of any two of the three who might agree on an award. This, it seems to me, is rather a forced and technical construction of the order of reference. The causes were referred to the arbitrators in the first instance; if they agreed, there *687 would be no occasion for the intervention of the selected umpire. There was no necessity, although in view of a possible disagreement, it was convenient and legal for the umpire to act with them in investigating the facts; but he could have acted separately after such disagreement. They would scarcely have provided for an umpire, if they had contemplated it as no more than a mere submission to three arbitrators, with authority to any two to make an award. If they had so designed, they would have provided that the arbitrators with the umpire should make the award; and not that the umpire in case of disagreement, should decide the difference. An umpire means a sole arbitrator, one who is to make an end of the matter, if the others cannot. 1 Bac. Abr. 319, Arbitrament and Award, letter D. In providing for an umpire to settle such difference in case of a disagreement between the arbitrators, they must have intended that he should be empowered to do whát the term implied, and what the arbitrators had been unable to accomplish, that he should make his own award. If his sole function was to settle isolated questions upon which the arbitrators disagreed, in conformity with the views of one or the other, and he should have differed from both, as was the fact, there could have been no award, as two could not have concurred in any conclusion. The parties never contemplated such a state of things; for in the same clause they provide that the award when made by them or their umpire, and certified by them, shall be entered as the judgment of the court, showing that they looked to the contingency of a sole award by the umpire. As the arbitrators disagreed in each case, it became the duty of the umpire to decide all the cases : And no question arises as to what would have been the consequence, if the arbitrators had agreed as to one or more of the cases, and disagreed as to the others. The umpire sets out the facts *688 as they actually existed, a disagreement between the arbitrators in each of the six cases, and concludes that the duty had devolved on him as umpire, by the terms of the submission, to decide all the cases. In this it seems to me he did not misconstrue the order of reference, or transcend his authority.
The award of the umpire is asimple judgment that the appellant should pay to the appellee so much money and the costs in each of the four actions of debt; and in the two actions of assumpsit, he decided that a recovery was barred by the statute of limitations, and therefore awarded that they should be dismissed with costs to the appellant. No explanation is given. None of the grounds, or principles, or calculations, on which the award rests, so far as it respects the cases in which the award was against the appellant, appear either upon the face of the award, or on any paper annexed to it, or referred to by it, or from any certificate or statement of the umpire returned since. Nor has his deposition been taken in the case.
The principle has been so often adjudicated in this and other courts that an award cannot be set aside except for errors apparent on its face, misconduct in the arbitrators, some palpable mistake, or fraud in one of the parties, that it would be useless to refer to. authorities to sustain the proposition. The rule as to palpable mistakes does not comprehend errors of judgment in its fair exercise upon the matter. For as was said by the chancellor in Knox v. Symmonds, 1 Ves. jr.’s R. 869, an award cannot be set aside for a mere error in judgment in the arbitrator$ for they refer their disputes to his judgment, and that would be a ground for setting aside every award. In Dick v. Milligan, 2 Ves. jr.’s R. 23, the suits arose out of partnership transactions ; and an order of reference was made which expressed that the arbitrators were to take an account of all the dealings in like manner as if the same had been *689 referred to a master; and that they should be bound by the award. The court remarked there was a great difference between a report of the master and an award. An arbitrator is constituted judge of the facts without appeal; the master is to prepare the case for the court, the real judge, and the master is only the minister; whereas in the other case, the arbitrator is the judge and not the court.
The first error assigned is that the arbitrators admitted illegal evidence.
There is nothing on the face of the award or referred to by the umpire, to show on what evidence he acted. It appears from the evidence of the clerk of the court, that all the papers tied up in a bundle and delivered to one of the attorneys of the plaintiff in error, were returned to the officer, and delivered to him along with the award; and no evidence was given of any other delivery of the award: and all those papers are copied into the record. Amongst them is a brief record of the testimony, proved by the arbitrators to have been written down by one of them as it was given in before them, intended as a memorandum of the testimony, for the convenience of the arbitrators and umpire, instead of a separate memorandum by each. That exceptions were taken at the time to the admissibility of portions of the evidence, but the evidence wa's recorded, reserving the question of the legality or illegality of the testimony for decision when the arbitrators should come to consider and decide the controversy. The arbitrators were the counsel of the parties who had attended to the suits from the commencement of the litigation; the umpire, one of the most learned and distinguished ornaments of the profession. In Sharman v. Bell, 5 Maule & Sel. 504, it is said, where the merits in law and in fact are referred to an arbitrator of common knowledge, as we must presume a gentleman of the bar to be, the court will *690 not open the award unless something can be alleged amounting to perverse misconstruction of the law, or misconduct in the arbitrator. Here nothing of that kind is alleged. The arbitrators could not say that the evidence was improper or incompetent until they knew what it was. They noted it down, reserving all legal objections; and the presumption is, in the absence of all evidence to the contrary, that, as both arbitrators and umpire were selected no doubt in part for their high legal attainments, all improper testimony would be discarded from their consideration, when they came to consider and decide the controversy.
The second error is, that upon the bond falling due on the 21st of March 1819, interest is allowed from the 21st of March 1819, instead of from the 21st of March 1820, upon the balance awarded, and a statement is referred to showing the mistake. The statement is no part of the award, but the mistake was palpable, being a mere error in adopting the time at which the bond fell due instead of the period at which the last credit was allowed, and it was remedied when judgment was entered, by the release of the interest for a year.
The third, fourth and fifth errors relate to the application of credits, the refusal to allow sundry payments claimed by the plaintiff in error appearing in a book referred to, and other items shown by documents and statements delivered by the umpire along with the award, to be proper credits. It is sufficient to say, in regard to the matters relied on in these assignments of error, that there is nothing on the face of the award, or any paper made a part of it or referred to by it, which can be looked to on this enquiry. The exceptions, moreover, proceed apparently upon the idea that the court is to deal with the award as if it were the report of a master commissioner. It is manifest these *691 exceptions involve most of the matters in dispute, and which were submitted to the judgment of the arbitrators ; and, in the language of one of the judges in the case of Morgan v. Mather, 2 Ves. jr.’s R. 15, it would he a melancholy thing to set aside an award on matter of fact, because the court differed from the arbitrators in judgment.
If it were proper, therefore, to look behind the award, an error of judgment on the part of the umpire in regard to the facts could not he corrected by the court. The entries in the book referred to, if prima facie, were not conclusive evidence, and the weight to which they were entitled in connection with the other evidence, was a matter for the consideration of the umpire, and his judgment is conclusive.
The sixth assignment of error relates not to the conduct of the umpire, but of the arbitrators. That, if well founded, could not affect the validity of the umpire’s award, provided they disagreed.
But there would seem to be no foundation for the exception. After the evidence closed, each arbitrator considered the matters submitted to them. They made out notes of the result of their examination, which were interchanged; and not agreeing, each made out his own report. Considering the character of the accounts submitted, this was, perhaps, the most satisfactory mode of comparing their views.
As to their failure to decide upon the admissibility of the testimony, that, so far as respects the umpire, has already been considered.
The last error assigned is, that the Circuit court erred in entering a judgment in favor of the defendant in error against the plaintiff in error for costs in the second suit. This, even if well founded, is too minute a matter to be entitled to any weight. The two suits were consolidated, and the court gave judgment for the costs incurred before the order of consolidation, *692 excluding an attorney’s fee and the tax on the writ. The costs recovered, therefore, are the clerk’s and sheriff’s fees. The motion to consolidate is addressed to the discretion of the court. There may be a good reason for bringing separate actions, though all might have been joined. And the amount of costs to be allowed, after an order of consolidation, is a subject for the consideration of the court directing the consolidation, and should be left to its discretion.
I think the judgments should be affirmed.
The other judges concurred in the opinion of Allen, J.
Judgment affirmed.